**George G. HARDIE, Kard King, Inc., and Park Place Associates, Ltd., Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–5005.

United States Court of Appeals, Federal Circuit.

Oct. 1, 2001.

Rehearing Denied Nov. 30, 2001.

Before MAYER, Chief Judge, NEWMAN and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Plaintiffs–Appellants George G. Hardie, Kard King, Inc., and Park Place Associates, Ltd. (collectively, "PPA"), appeal from the decision of the United States Court of Federal Claims, which dismissed on the pleadings PPA's contract claim against the United States for lack of subject matter jurisdiction and PPA's Fifth Amendment takings claim for failure to state a claim upon which relief can be granted. *Hardie v. United States,* No. 99–890C (Fed.Cl. Aug. 31, 2000). We *vacate* the judgment of the Court of Federal Claims in favor of the United States, and *remand* for further proceedings.

I

PPA, a California limited partnership, entered into a Joint Venture Agreement with LCP Associates ("LCP"), a California general partnership, in order to organize, own and operate a legal card-playing club called The Bell Gardens Bicycle Club. The club itself does not engage in games of chance, but instead provides a facility at which others play cards. The club generates its income by renting space to card players at an hourly fee and by providing the assistance of expert dealers. After opening in 1984, the club became an instant success, and, by 1990, it was generating after-tax profits of $23 million per year and was estimated to be worth $150 million.

Unbeknownst to PPA, money put up by LCP to build and operate the club came from organized crime sources who used the club to launder proceeds obtained from an extensive drug smuggling operation. In due course, the government uncovered the criminal activity, and along with criminal convictions of certain individuals, the United States obtained the general partnership interest in LCP. The United States received its general partnership interest in forfeiture proceedings conducted under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Although the United States thus became the controlling party and manager of the Bicycle Club, PPA was allowed to retain its interest in the Bicycle Club because it was innocent of any of the criminal activity that led to the creation and operation of the club.

The United States proved to be quite a successful manager of the Bicycle Club. In the nine years after the forfeiture, the United States received more than $30 million in partnership distributions. During those years, the club was managed by individuals selected by the United States, who regularly entered into contracts that kept the club up and running.

According to PPA, however, the United States, while prospering from its general partnership interest, was not living up to its obligations under the joint venture agreement with PPA. Consequently, PPA

filed suit against the United States under the Tucker Act, claiming that the United States has breached its obligations as stated in the joint venture contract, thereby causing damages in excess of $150 million to PPA. PPA also asserted related claims of breach of covenant of good faith and fair dealing. In the event of rejection of its contract claim, PPA asserted that the failure to honor its contract claim would result in a Fifth Amendment taking of the contract rights it sought to assert against the United States.

The United States moved to dismiss PPA's contract claim for want of jurisdiction and its takings claim for failure to state a claim on which relief can be granted. In moving to dismiss PPA's complaint on the pleadings, the United States accepted as true, for purposes of the motion, the facts as alleged in PPA's complaint. Thus, for purposes of ruling on the motion and of our appellate review, the United States accepts, at this preliminary stage of the litigation, PPA's assertions that the joint venture agreement contains provisions that would obligate a party in privity of contract with PPA.

The Court of Federal Claims granted the United States's motion. With respect to the contract claim, the court held that the United States is not in privity with PPA, and that absent privity of contract, there is no contract upon which a Tucker Act claim may lie. In addition, the court held that even if there is privity of contract between the United States and PPA, the joint venture agreement contains an arbitration clause that would preclude litigation by the parties in the Court of Federal Claims.

PPA timely appealed the adverse decision to this court, and we have jurisdiction to hear the appeal under 28 U.S.C. § 1295(a)(3).

## II

We review *de novo* a decision of the Court of Federal Claims to dismiss a complaint for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. *Hanlin v. United States,* 214 F.3d 1319, 1321 (Fed. Cir.2000); *Shearin v. United States,* 992 F.2d 1195, 1195 (Fed.Cir.1993). Hardie's complaint alleges that jurisdiction of this action lies in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491.

The Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). An action may be maintained under the Tucker Act only if it is "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1992). "[B]y giving the [Court of Federal Claims] jurisdiction over specified types of claims against the United States, the Tucker Act constitutes a waiver of sovereign immunity with respect to those claims." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (footnote omitted).

PPA argues that its breach of contract claims fall within two of the above categories, namely, claims "for liquidated or unliquidated damages in cases not sounding in tort," and claims "founded ... upon ... [an] express or implied contract with the United States." We need only to address PPA's claim based upon an express contract with the United States, namely the joint venture agreement.

The government makes two primary arguments on appeal to support the judgment of the Court of Federal Claims dismissing all of PPA's claims. First, it argues that the RICO statute, taken as a whole, preempts the cause of action brought by PPA. The essence of this argument is that the RICO statute, providing for forfeiture and the mechanics thereof, occupies the field, so to speak, and requires that any complaints about the forfeiture process be brought in the court that exercised RICO jurisdiction to effect the forfeiture. Second, the government argues that even if PPA's contract cause of action is not so preempted, it must fail for the want of privity between the parties. The essence of this argument is that, on the facts pleaded in PPA's complaint, there is no privity of contract between PPA and the United States. We turn first to the preemption argument.

On March 16, 2001, the United States Court of Appeals for the Eleventh Circuit issued a decision that moots the government's preemption argument in this case. That decision, styled *United States v. Gilbert*, 244 F.3d 888 (11th Cir.2001), *petition for reh'g en banc denied*, No. 97–4578–FF, 2001 WL 921812, slip op. at 1, (11th Cir. July 24, 2001), recounted the long and complicated history of litigation concerning the forfeiture of the Bicycle Club. Indeed, that decision marked the fourth ("and we hope final") appeal of the matter to the Eleventh Circuit. *Gilbert*, 244 F.3d at 893. In that decision, the Eleventh Circuit held the forfeiture order pursuant to which the government purportedly takes its interest in the Bicycle Club invalid on several grounds. *Id.*

First, the forfeiture order entered by the district court was entered before a judgment of conviction was entered against the RICO defendant, in violation of law, which requires that criminal forfeiture "may not take place until a judgment of conviction is entered and sentence is imposed." *United States v. Alexander*, 772 F.Supp. 440, 440 (D.Minn.1990). Second, Rule 31(e) of the Federal Rules of Criminal Procedure expressly requires, in order to achieve a valid forfeiture, that the verdict of forfeiture be entered as a special verdict. *See United States v. Amend*, 791 F.2d 1120, 1128 (4th Cir.1986). According to the holding of the Eleventh Circuit, "there was nothing special" about the verdict forms given to the jury that returned the verdict of forfeiture. *Gilbert*, 244 F.3d at 923. The Eleventh Circuit also held that the attempted forfeiture of the Bicycle Club also failed for want of a final order of forfeiture, as required by 18 U.S.C. §§ 1963(e), 3553, and Rule 32(b) of the Federal Rules of Criminal Procedure. *Gilbert*, 244 F.3d at 924. The order of forfeiture for the Bicycle Club was entered immediately following jury verdicts on April 3, 1990, and a full five months before any sentencing of the defendants. Consequently, that order of forfeiture, according to the Eleventh Circuit, was not a final order, being at best a temporary restraint on the property pending sentencing. Finally, "the order of forfeiture upon which the Government relies is invalid," *Gilbert*, 244 F.3d at 893, and "the Government actually holds nothing by virtue of the forfeiture order," *id.* at 922, because the entire forfeiture proceeding itself is invalid. This is so because forfeiture proceedings under RICO are *in personam* proceedings, a form of punishment imposed by the jury to divest the criminal defendant of the profits of the illegal activity for which he has been convicted. *See United States v. Bissell*, 866 F.2d 1343, 1348, n. 3 (11th Cir.1989); *United States v. Conner*, 752 F.2d 566, 576 (11th Cir.1985); *see also* 18 U.S.C. § 1963(c) (1994); Fed.R.Crim.P. 32.2. With regard to the Bicycle Club

forfeiture, the Eleventh Circuit held that the proceedings were, erroneously, *in rem,* and therefore the forfeiture proceedings themselves are invalid.

To reiterate, the essence of the Government's preemption argument is that issues concerning the forfeiture of the Bicycle Club must be adjudicated before the RICO court, not in the Court of Federal Claims. The Government's theory presumes a legitimate RICO forfeiture. We are, however, confronted with the fact that no valid RICO forfeiture proceedings and no valid forfeiture order exists with regard to the Bicycle Club. Even if there is any merit to the Government's preemption argument, a matter on which we venture no comment, in this instance there is no valid RICO proceeding to which we could assign preemptive effect. We thus reject the Government's preemption argument in this case.

Consequently, whether PPA's contract claim can survive a motion to dismiss depends on the strength of the Government's privity argument. For the reasons set forth below, we reject that argument as well, and conclude the judgment dismissing PPA's complaint must be reversed. We hold that PPA's contract claim survives the Government's motion to dismiss, and we remand the case for further proceedings. Since PPA's takings claim is pitched in the alternative, that is, the takings claim is subsumed in the contract claim if the contract claim survives the motion to dismiss, we comment no further on the takings claim.

Of course, the Government cannot be haled into court on a contract claim where privity of contract is absent. *See Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984) ("The government consents to be sued only by those with whom it has privity of contract.…"). Therefore, to establish jurisdiction over its breach of contract claim in this case, PPA must adequately plead contractual privity with the United States. *Total Med. Mgmt., Inc. v. United States,* 104 F.3d 1314, 1319 (Fed.Cir.1997) ("[T]he law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be pleaded, not ultimately proven.").

PPA concedes that there is no contract to which both PPA and the United States are named parties. Instead, PPA's breach of contract claims are based upon the Joint Venture Agreement which created the Bicycle Club, which of course is a contract between PPA and LCP. Under the law of California, which indisputably governs the Joint venture agreement, the general partner of a partnership is directly liable for the partnership's debts. Cal. Corp.Code §§ 15509(1), 16306; *In re Prestige Ltd. Partnership–Concorde,* 205 B.R. 427, 433 (Bankr.N.D.Cal.1997), *aff'd* 164 F.3d 1214 (9th Cir.1999) (holding that a general partner of a California limited partnership is personally liable on promissory note executed by partnership).

Thus, PPA's breach of contract theory, as pleaded in its complaint and as argued before both the district court and this court, is that privity of contract is established in this case between PPA and the United States because the United States, through its lengthy course of conduct beginning with the forfeiture of the Bicycle Club in 1990, "stepped into the shoes" of the general partner of LCP. Moreover, according to PPA, if the United States indeed effectively became the general partner of LCP, then under the governing California law, PPA (as a named party to the Joint venture agreement between PPA and LCP) can sue the United States directly for alleged breaches of the Joint venture agreement.

■ We agree with PPA that it has satisfied its burden to adequately plead a viable breach of contract claim within the jurisdiction of the Court of Federal Claims. First, we note that the Government explicitly concedes that in this case, "[t]he United States had obtained a general partnership interest in LCP as a result of a [RICO] forfeiture action arising out of money laundering activities." Moreover, this concession by the United States is entirely consistent with the record in this case. Despite the position the United States now takes, the record indicates that during the time that the United States controlled the Bicycle Club and was attempting to sell its interest, the United States repeatedly acknowledged that the Joint venture agreement continued in existence, and that the United States was bound by that agreement.

Specifically, on August 7, 1991, the United States District Court for the Southern District of Florida entered an order that confirmed a settlement agreement between the United States and several of LCP's partners. In that settlement agreement, all parties–including the United States–"acknowledge[d] that the Bell Gardens Bicycle Club, the Joint Venture Agreement of the Bell Gardens Bicycle Club, and LCP continue in existence subject to any orders amending the Forfeiture Order of April 3, 1990." Similarly, on March 29, 1993, the Florida District Court entered an order appointing Harry Richard as trustee, and granting him the following powers:

> [t]o exercise all rights, titles, powers and privileges of the United States in LCP, including the right and duty to exercise any and all voting rights and other rights or benefits attached to, derived from, or otherwise attributable to the LCP Limited Partnership Agreement and any amendments thereto, and the

Agreement of Joint Venture of the Bicycle Club and any amendments thereto. Subsequently, the Florida District Court entered an order proposed by the United States which stated as follows:

> [T]he Successor Trustee shall assume, on behalf of the United States Government, all of the "rights, privileges, interests, claims and securities" formerly held by M. Dale Lyon in "LCP" and the Bell Gardens Bicycle Club Joint Venture ("Joint Venture") including, but not limited to, the "rights, privileges, interests, claims, securities and duties" of the General Partner of "LCP" and the "Administrative Officer" of the Bell Gardens Bicycle Club Joint Venture.

The "Administrative Officer" of the Bell Gardens Bicycle Club Joint Venture was a position that existed solely by virtue of an explicit provision in the Joint venture agreement.

In addition, during the course of the forfeiture proceedings in the Florida District Court, the United States explicitly conceded that it was bound by the Joint venture agreement in at least one respect. Specifically, the government took the position that, if and when the United States were to sell its interest in the Bicycle Club, PPA would have a "right of first refusal" with respect to purchasing that interest. However, PPA would have such a "right of first refusal" only if the government in fact owed contractual duties to PPA, since this right of first refusal exists solely by virtue of another explicit provision in the Joint venture agreement. And when the United States decided to sell its interest in the Bicycle Club, it was authorized to do so by the Florida District Court in its capacity as a general partner of LCP. *United States v.. Kramer*, 957 F.Supp. 223, 228 (S.D.Fla.1997).

A Department of Justice audit report of the government's Bicycle Club activity,

conducted in 1998, concluded that by 1993, "[a]s the general partner, the government now has exclusive control over the business of the partnership and fiduciary responsibilities to the other partners."

This court has never created a bright-line rule for determining what constitutes "privity." Instead, in several categories of cases, this court has recognized Tucker Act jurisdiction over contract-based claims where there is no literal contract between the plaintiff and the United States. For example, despite lack of privity, we have held that suits may be brought against the government in the Court of Federal Claims by an intended third-party beneficiary, *see Montana v. United States*, 124 F.3d 1269, 1273 (Fed.Cir.1997), by a subcontractor by means of a pass-through suit when the prime contractor is liable to the subcontractor for the subcontractor's damages, *see E.R. Mitchell Const. Co. v. Danzig*, 175 F.3d 1369, 1370–71 (Fed.Cir.1999), and by an assignee of a claim against the United States (specifically, a Miller Act surety) based on equitable subrogation, *see Insurance Co. of the West v. United States*, 243 F.3d 1367, 1375 (Fed.Cir.2001). "[T]he common thread that unites these exceptions is that the party standing outside privity by contractual obligation stands in the shoes of the party within privity." *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed.Cir.1999).

The privity issue in this case presents a consideration typically absent in the situations in which we normally confront a privity concern. Normally, the United States enters into a contract with the "prime contractor," and another party claims privity with the United States by virtue of having "stepped into the shoes" of the prime contractor in some sense. The typical situations involve subcontractors, sureties, and assignees of the prime contractor.

*See, e.g., United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1548–49 (Fed. Cir.1983). Due to the strong policy interest in maintaining a "single point of contact" with the United States, there is a correspondingly strong resistance to extend the concept of "privity" beyond the actual parties with which the United States originally contracted explicitly. *See Admiralty Construction, Inc. v. Dalton*, 156 F.3d 1217, 1220 (Fed.Cir.1998) (citing S.Rep. No. 95–1118, at 16, reprinted in 1978 U.S.C.C.A.N. at 5250).

In this case, PPA originally contracted with LCP to form the Bicycle Club joint venture. The United States had nothing to do with the original formation of LCP, PPA, or the Bicycle Club joint venture, and none of these entities ever contemplated or desired to enter into contracts with the United States. However, the United States has elected to step into the shoes of the general partner of LCP, and PPA had no choice but to accept its new "partner." Surely, there would be privity of contract between PPA and the United States in this case if LCP had simply sold its interest in the Bicycle Club joint venture outright to the United States as soon as the joint venture was executed. "[W]hen the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *United States v. Winstar Corp.*, 518 U.S. 839, 895, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (quoting *Lynch v. United States*, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934)). The only question remaining, then, is whether it makes any difference that the United States happened to obtain its "interest" in the Bicycle Club through forfeiture, as opposed to any other means. The Court of Federal Claims erroneously concluded that this distinction made a difference.

The Court of Federal Claims reasoned that the United States had not "consented" to the Joint venture agreement because it seized LCP pursuant to its "sovereign police powers" to enforce the criminal laws. The Court of Federal Claims further reasoned that the government had no choice but to take over LCP, and that without affirmatively "consenting" to the contract at issue, the government could not be bound by it.

The government of course is immune from suit for the consequences of "its public and general acts as a sovereign." *Horowitz v. United States,* 267 U.S. 458, 461, 45 S.Ct. 344, 69 L.Ed. 736 (1925) (holding that where the government places embargo on shipments of silk by freight, damage to a silk shipper resulting from the embargo cannot be charged to the United States). Whether the initial act of attempting to seize a general partnership in the Bicycle Club by RICO forfeiture itself is a sovereign act is beside the point. The point is that the United States, according to PPA's allegations, shed whatever public personna it may have brought initially to the club, and thereafter conducted its business in a decidely nonpublic and nongeneral manner. The *Horowitz* doctrine thus provides no support for the dismissal of the contract count pled by PPA.

Further, although it may be true that a *court* must order forfeiture if it is requested (see *United States v. Kravitz,* 738 F.2d 102, 104 (3d. Cir.1983)), the Department of Justice clearly has discretion not to *request* forfeiture in particular cases in the first place. Indeed, an internal Department of Justice directive requires the Department to consider alternatives to forfeiture in cases where "it is determined that forfeiture is not desirable." Not surprisingly, one of those alternatives is to decline forfeiture. In this instance, the government evidently saw an opportunity to reap financial gain from the Bicycle Club, and assumed the role of the general partner and manager with gain as its goal. The United States was not compelled to become the general partner of LCP; instead, it chose to do so.

In short, in appropriate circumstances such as these, Tucker Act jurisdiction over contract-based claims extends beyond those alleging breach of a contract to which both the plaintiff and the United States are named parties. *Insurance Co. of the West v. United States,* 243 F.3d 1367, 1373 (Fed.Cir.2001) (stating the parallel principle that "waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments, whether voluntary assignments or assignment by operation of law, where the statutory waiver of sovereign immunity is not expressly limited to waivers for claims asserted by the original claimant").

Although we conclude that the Court of Federal Claims erred in dismissing PPA's breach of contract claims for lack of subject matter jurisdiction at the pleading stage in this case, we express no opinion concerning the merits of PPA's claims, as that is a matter to be resolved at trial.

■ Finally, we note that the Court of Federal Claims stated that "even if there were a contract based on the joint venture, it contains an arbitration clause to which PPA has not had recourse." However, while older case law suggests that an arbitration clause "ousts a court of jurisdiction, that view has lost much, if not all, of the legitimacy it once may have had." *DiMercurio v. Sphere Drake Ins.,* 202 F.3d 71, 76 (1st Cir.2000). Arbitration agreements are properly viewed as contractual arrangements for resolving disputes, not as documents divesting a court of jurisdiction. Therefore, if a party asserts the right to

arbitrate, the agreement must be recognized. However, the failure to assert that right does not constitute a proper basis for barring a lawsuit involving claims within the scope of an arbitration provision. *Burton–Dixie Corp. v. Timothy McCarthy Constr. Co,* 436 F.2d 405, 407 (5th Cir. 1971) (rejecting argument that plaintiff's lawsuit involving claims within the scope of an arbitration provision was barred as a matter or law because plaintiff did not demand arbitration); *Rhone–Poulenc Specialites Chimiques v. SCM Corp.,* 769 F.2d 1569, 1573 (Fed.Cir.1985) (same).

In this case, neither the government nor PPA has invoked the arbitration clause in the Joint Venture Agreement. Under these circumstances, the mere existence of the arbitration clause does not divest the Court of Federal Claims of subject matter jurisdiction.