**Eugene A. FISCHER, pro se,**

v.

**The UNITED STATES, Defendant.**

**No. 10–18C.**

United States Court of Federal Claims.

Jan. 1, 2011.

Eugene A. Fischer, Butner, NC, plaintiff pro se.

Russell A. Shultis, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant. Lucy Roberts, U.S. Marshals Service, of counsel.

## MEMORANDUM OPINION AND ORDER

MILLER, Judge.

Plaintiff, appearing *pro se,* filed a complaint in the United States Court of Federal Claims on January 12, 2010, alleging, *inter alia,* violation by the United States of his Fifth Amendment constitutional rights to due process and just compensation based on seizure of his property assessed as forfeiture in excess of $30 million. On July 9, 2010, defendant moved for summary dismissal pursuant to RCFC 12(b)(1), based on lack of subject matter jurisdiction. Initial briefing was completed on September 22, 2010.[1] The issue presented is whether plaintiff has met his burden to establish jurisdiction in the Court of Federal Claims. On October 5, 2010, this court ordered supplemental briefing on whether the criminal forfeiture statutes by which the Government seized plaintiff's property contemplate a money-mandating claim when the Government realized proceeds in excess of the forfeiture amount. Supplemental briefing was completed on November 12, 2010. Argument is deemed unnecessary.

### FACTS

The facts of this case have traveled extensively through the American judicial system. On December 8, 1988, a jury in the United States District Court for the Southern District of Illinois convicted Eugene A. Fischer ("plaintiff") of violating the Controlled Substance Act, 21 U.S.C. §§ 841(a)(1), 846, 848(b) (1982 & Supp. IV 1986) (the "CSA"), for "being the principal administrator of a continuing criminal enterprise and of conspiring to distribute marijuana," *United States v. Fischer,* 205 F.3d 967, 969 (7th Cir.2000). Plaintiff received a life sentence and a concurrent sentence of thirty-five years. Plaintiff's conviction under the "drug kingpin" statute, 21 U.S.C. § 848, led not only to his sentence of life imprisonment, but also to an assessment of $30 million in criminal forfeitures. *Id.* The federal district court ordered plaintiff's $30 million forfeiture to the United States, along with other forfeitures in differing amounts for plaintiff's co-conspirators. *See* Compl. filed Jan. 12, 2010, ¶ 6; *id.* App. A at 3–4.[2] The United States Court of Appeals for the Seventh Circuit affirmed both the conspiracy conviction and the conviction for participation in a continuing criminal enterprise, as well as the two sentences. *United States v. Kramer,* 955 F.2d 479, 493 (7th Cir.1992).[3]

As the United States began to seize the forfeited assets, it became evident that the Government needed to "substitute property" possessed by plaintiff in order to satisfy the forfeiture amount, pursuant to 21 U.S.C. § 853(p) (2006). *See* Compl. App. A at 4–7. The seizure reached into the jurisdiction of the Southern District of Florida when the Government discovered plaintiff's ownership interest (along with his initial co-criminal participants) in a California partnership called LCP Associates, Ltd. ("LCP"). *See id.* at 5–6. LCP partly owned a card-playing club in Garden City, California, known as the Bell Gardens Bicycle Club (the "Bicycle Club"), possessing "an estimated net value of $150 million." *United States v. Kramer,* 912 F.2d 1257, 1258 (11th Cir.1990); *see also*

---

1. Although styled as a motion for summary judgment, the court allowed plaintiff's sur-reply to be filed by order entered on September 22, 2010. The sur-reply does not qualify as a motion under RCFC 56; no cross-motion for summary judgment is pending.

2. In the same action, the court ordered plaintiff's co-conspirator Benjamin Barry Kramer to forfeit $60 million and co-conspirator Randy Thomas Lanier to forfeit $59.5 million. *See* Compl. App. A at 3.

3. Plaintiff's conspiracy conviction later was vacated upon challenge in 1997 because the United States Supreme Court held in *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), that convictions under both § 846 and § 848 amounted to double jeopardy. *Fischer,* 205 F.3d at 969.

Compl. App. A at 7. LCP "financed more than twelve million dollars of the initial investment [in the club] using the proceeds of a drug trafficking ring." *United States v. Park Place Assocs. Ltd.*, 563 F.3d 907, 913 (9th Cir.2009). In March 1990 some LCP partners were "convicted of laundering the profits of a drug-smuggling business." *Id.* at 914. In April 1990 a jury found for the United States in a subsequent Racketeer Influenced and Corrupt Organization Act ("RICO") trial. *Id.* Thereafter, the United States District Court for the Southern District of Florida ordered the forfeiture of the Bicycle Club to the United States, and by August 1993 the Government garnered its "effective control" with a "fifty-five percent interest in LCP." *Id.* The United States held that interest until a May 18, 1999 sale. *Id.*

The years between the Government's seizure of the Bicycle Club and its 1999 sale registered a series of tangential lawsuits between the United States and the Bicycle Club's other owner, Park Place Associates ("PPA"), over the Government's management of the Club.[4] Also during that period, plaintiff began inquiring into the "final disposition" of his seized assets through Freedom of Information Act ("FOIA") requests to the Federal Bureau of Investigation (the "FBI"). Compl. ¶¶ 8–9. These requests, which plaintiff filed throughout 1995 and 1996, were denied when the Government asserted that the information sought was exempt from disclosure due to its relevance in "ongoing criminal investigations" involving plaintiff's partners. *Id.* ¶ 10, App. D (citing 5 U.S.C.

§ 552(b)(7)(A) (2006) (exempting from public disclosure "records or information compiled for law enforcement purposes ... to the extent that [such] production ... could reasonably be expected to interfere with enforcement proceedings")). When the Government applied for an order of forfeiture and a restraining order against plaintiff's financial interest in the Bicycle Club, plaintiff denied having any interest in the club. Def.'s Br. filed July 9, 2010, App. at 2, 6. Plaintiff, however, admitted to receiving notice that the United States was selling its interest in the Bicycle Club in 1999, and he did not file any subsequent FOIA requests to the FBI. *Id.* App. at 10.[5]

Importantly, the Eleventh Circuit ruled the forfeiture of the Bicycle Club invalid because, *inter alia*, the Club's owners were a joint venture between LCP and PPA, not any individual defendant, and the Government improperly targeted the Bicycle Club for seizure, rather than co-conspirator Kramer's LCP interest.[6] *United States v. Gilbert*, 244 F.3d 888, 922–24 (11th Cir.2001). In the action taken to satisfy the forfeiture against plaintiff, the Government sought to seize the Bicycle Club as "substitute property." Compl. App. A at 10. Although the United States Court of Appeals for the Eleventh Circuit in *Gilbert* mentioned plaintiff three times as one of the LCP partners, *see Gilbert*, 244 F.3d at 894, 899 n. 23, 902, plaintiff continued to insist in litigation over his own forfeiture that he had no interest or affiliation with the Bicycle Club. *See* Affidavit of Eugene A. Fischer, Sept. 14, 2010, ¶ 7. Af-

---

4. The Government managed the Bicycle Club through trustees appointed by the Southern District of Florida. *Park Place*, 563 F.3d at 914.

5. In subsequent litigation related to the Bicycle Club forfeiture, plaintiff confirms in his "Opposition to Amendment of Restraining Order" that he "just received" notice of the May 18, 1999 sale of the United States' interest in the Bicycle Club in September 1999. Def.'s Opp. to Amend., at 1, *United States v. Fischer*, No. 87–40070–JLF (S.D.Ill.1999); Def.'s Br. filed July 9, 2010, App. at 10. The actual notice given to plaintiff is not included in any of the filings in the instant case.

6. While the United States District Court for the Southern District of Illinois ordered a forfeiture against Kramer, Fischer, and Lanier in 1988, *see* Compl. App. A at 3, a separate order of forfeiture

pertaining to Benjamin Kramer, his father Jack Kramer, and Michael Gilbert was ordered in an ancillary action. *Id.* App. A at 5. It was this forfeiture action that the Eleventh Circuit declared invalid. *Gilbert*, 244 F.3d at 922–24. The factual findings leading the United States to discover plaintiff's interest in LCP (which partly owned the Bicycle Club) and subsequent request for the seizure of the Bicycle Club to satisfy the forfeiture against plaintiff and his convicted partners came from a 1992 "Ex Parte Application for Entry of an Order of Forfeiture of Substitute Property" filed by the United States in connection with the forfeiture later declared invalid by the Eleventh Circuit. Compl. App. A at 5–6, 10 (copy of the 1992 ex parte forfeiture application).

ter the Eleventh Circuit invalidated the forfeiture of the Bicycle Club, plaintiff did not submit any subsequent FOIA requests, pursue any administrative appeals, or file any complaints within the judicial system to review the validity of the Government's seizure of the Bicycle Club pertaining to the forfeiture against him. In subsequent actions involving the Bicycle Club, both the United States Court of Appeals for the Ninth Circuit and the United States Court of Appeals for the Federal Circuit (the latter in an unpublished opinion) acknowledged the Eleventh Circuit's determination that "the Government actually holds [no ownership interest] by virtue of the forfeiture order" against the convicted owners of the club. *Gilbert*, 244 F.3d at 922; *Park Place*, 563 F.3d at 917 ("[T]he Eleventh Circuit had invalidated the RICO forfeiture proceeding under which the United States had obtained its interest in the Club...."); *Hardie v. United States*, 19 Fed.Appx. 899, 902 (Fed.Cir.2001) ("[T]he Eleventh Circuit held the forfeiture order pursuant to which the government purportedly takes its interest in the Bicycle Club invalid on several grounds.").

Plaintiff's next action did not come until 2007, upon the FBI's partial release of documents that he requested through the FOIA during 1995 and 1996. Compl. ¶ 11.[7] Subsequently, plaintiff renewed his FOIA requests. When the FBI denied plaintiff's renewed requests for additional information, he filed suit in the United States District Court for the District of Columbia. *See Fischer v. FBI*, No. 07–2037(ESH), 2008 WL 2248711, at *1 (D.D.C. May 29, 2008). In a 2008 unpublished opinion, the court characterized the agency's ten-year delay in releasing the documents as "inexplicable." *Id.* at *2. The court ordered the filing of a Vaughn index of all responsive documents pertaining to the Bicycle Club. *Id.* at *3.

The significance of the Bicycle Club's seizure manifested itself in plaintiff's complaint filed in the United States Court of Federal Claims on January 12, 2010, which seeks $9,270,724.22 in damages. Compl. at 9. This amount represents the difference between the proceeds of the United States' sale of its interest in various forfeited items owned by plaintiff, including his interest in the Bicycle Club, and the $30 million judgment to which the United States was entitled. Plaintiff alleges that he "is not filing a claim challenging any asset forfeiture but rather a claim that the monetary forfeiture exceeded the $30,000,000 forfeiture against him." Pl.'s Br. filed Aug. 16, 2010, at 5. Plaintiff's forfeited portion of the Bicycle Club was $33,820,000.00, Compl. ¶ 17, and it represented the only asset valued above the $30 million forfeiture mark and "the only asset that could have caused the value of [plaintiff's] forfeited assets to approach the $30 million limit." Def.'s Br. filed July 9, 2010, at 5. All other forfeited assets listed within plaintiff's complaint accumulate to an estimated value of $5,450,724.22. *See* Compl. ¶ 17.

Citing the six-year statute of limitations for filing actions in the Court of Federal Claims, 28 U.S.C. § 2501 (2006), defendant moved for summary dismissal, also contending as a minor point that plaintiff had not asserted a "money-mandating" claim. With "almost 20 years" between the Bicycle Club's forfeiture to the United States and plaintiff's suit, defendant asserts that the statute bars plaintiff's claim. Def.'s Br. filed July 9, 2010, at 4–5. Plaintiff counters that the Justice Department's June 10, 2010 correspondence with him informed him that his " 'claim [against the U.S. Attorney's Office for the Southern District of Illinois] accrued no later than 2004.' " Pl.'s Br. filed Aug. 16, 2010, at 3 (quoting *id.* App. A at 1 (June 10, 2010 letter to plaintiff from Department of Justice Torts Branch Director)). Plaintiff alternatively notes that the Government's concealing of information concerning asset dispositions rendered the accrual of his claim "inherently unknowable," thus triggering the "accrual suspension doctrine" to the statute of limita-

7. In a December 18, 2006 letter to plaintiff, the Office of Information and Privacy (the "OIP") explained that the FBI's previously claimed FOIA exemptions were "no longer applicable to withhold the records in their entireties," and in April 2007 the FBI informed plaintiff of the existence of approximately 580 pages of documents "that were potentially responsive to plaintiff's request." *Fischer v. FBI*, No. 07–2037(ESH), 2008 WL 2248711, at *1 (D.D.C. May 29, 2008) (internal quotation marks omitted).

tions. *Id.* at 4. Defendant's reply brief reaffirms its argument based on the applicable statute of limitations, further contending that plaintiff's Fifth Amendment takings claim also is subject to the jurisdictional bar of the statute of limitations. Def.'s Br. filed Sept. 2, 2010, at 4.[8] Plaintiff's sur-reply disputes defendant's characterization of his claims as not "money mandating" and barred by the statute of limitations. Pl.'s Br. filed Sept. 22, 2010, at 1.

Because neither defendant nor plaintiff adequately addressed whether the relevant statutes create a right to money damages for plaintiff, this court ordered further briefing on October 5, 2010. Defendant responded on October 22, 2010, that, not only did the relevant forfeiture statutes not create a money-mandating claim for plaintiff, but the broader statutory scheme, including the forfeiture statutes, preempts the court's jurisdiction. *See* Def.'s Br. filed Oct. 22, 2010, at 4. Plaintiff responded on November 12, 2010, that the relevant statutes are money mandating, *see* Pl.'s Br. filed Nov. 12, 2010, at 3-6, and that the excess proceeds realized by the United States from the forfeiture sale constitute an improper taking that entitles him to money damages, *see id.* at 7-9.

## DISCUSSION

### I. *Standard of review*

While documents filed by *pro se* claimants are liberally construed, the limited jurisdiction of the Court of Federal Claims will not bend for *pro se* claimants. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Kelley v. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not similarly take a liberal view of ... jurisdictional requirement[s] ... for *pro se* litigants only."); *see also Sanders v. United States,* 252 F.3d 1329, 1336 (Fed. Cir.2001) (upholding dismissal of breach of contract claim because *pro se* claimant failed in her burden to prove jurisdiction). Plaintiff "bears the burden of proving that the Court of Federal Claims possesse[s] jurisdic-

tion over his complaint." *Id.* at 1333. Plaintiff must prove jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). While the court will "normally consider the facts alleged in the complaint to be true and correct," *id.* at 747, "if [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof," *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *DaimlerChrysler Corp. v. United States,* 442 F.3d 1313, 1318 (Fed.Cir.2006) ("[I]t is settled that a party invoking federal court jurisdiction must, in the initial pleading, allege sufficient facts to establish the court's jurisdiction.").

The Tucker Act, codified at 28 U.S.C. § 1491(a)(1) (2006), confers jurisdiction on "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." The court's statutorily conferred jurisdiction "waives the Government's sovereign immunity for those actions" stated within the Tucker Act, requiring the court to construe that waiver in favor of the Government. *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc); *see also Radioshack Corp. v. United States,* 566 F.3d 1358, 1360 (Fed.Cir.2009) ("waivers of the United States's sovereign immunity are to be construed narrowly"). Because the Tucker Act does not set forth a substantive cause of action for plaintiff, " 'in order to come within the jurisdictional reach and the waiver of the Tucker Act,' " plaintiff must root his claim in another law possessing a " 'right to money damages.' " *Greenlee County v. United States,* 487 F.3d 871, 875 (Fed.Cir.2007) (quoting *Fisher,* 402 F.3d at 1172).

---

**8.** Defendant's July 9, 2010 motion to dismiss partially focused on plaintiff's due process claims. *See* Def.'s Br. filed July 9, 2010, at 4-5, 7 (citing Compl. ¶¶ 20-24). Plaintiff's response

clarified that he also alleged a Fifth Amendment takings claim. *See* Pl.'s Br. filed Aug. 16, 2010, at 1, 10. The court accepts that plaintiff does allege a takings claim.

## II. *Jurisdiction to hear claims relating to the CSA*

Plaintiff argues that the statutes under which the Government seized his forfeited property, 21 U.S.C. §§ 881, 853, create his money-mandating claim. Pl.'s Br. filed Nov. 8, 2010, at 3. However, when Congress provides via statute "a 'specific and comprehensive scheme for administrative and judicial review [to the district court],' ... the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed.Cir. 2001) (quoting *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 549–50 (Fed.Cir. 1994)). The Federal Circuit and the Court of Federal Claims consistently have held that the CSA contains such a scheme—thereby preempting this court's review of forfeiture actions emanating from it. *See id.* at 1376 (recognizing "type of forfeiture at issue," be it *in personam* or *in rem*, is immaterial regarding review of CSA forfeitures because statute provides a means by which property owners punished for criminal conduct can contest forfeiture's propriety); *Crocker v. United States*, 125 F.3d 1475, 1476–77 (Fed. Cir.1997) ("[W]hile [the law] can be read as recognizing the district courts' jurisdiction over a forfeiture of seized property or money under the Controlled Substances Act, it does not suggest the Court of Federal Claims has similar subject matter jurisdiction."); *Maracalin v. United States*, 52 Fed.Cl. 736, 743 (2002) ("This court, therefore, has no jurisdiction over actions contesting criminal forfeiture procedures."). The scheme's preemptive effect on jurisdiction of the Court of Federal Claims extends beyond contesting the propriety of a criminal forfeiture, to the recovery of illegal exactions imposed by federal officials when "Congress has expressly placed jurisdiction elsewhere." *Crocker*, 125

F.3d at 1477 (quoting *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed. Cir.1996) (internal quotation marks omitted)). This scheme places any such claim within the purview of the U.S. district courts. *See* 28 U.S.C. § 1355(a) (2006) ("The district courts shall have original jurisdiction ... of any action or proceeding for the recovery or enforcement of any ... forfeiture, pecuniary or otherwise, incurred under any Act of Congress."). No jurisdiction would exist here "[b]ecause the Court of Federal Claims is not a United States district court." *Edelmann v. United States*, 76 Fed.Cl. 376, 382–83 (Fed. Cl.2007); *see also Ledford v. United States*, 297 F.3d 1378, 1382 (Fed.Cir.2002).

Although plaintiff does not resist the general proposition that federal district courts have exclusive jurisdiction to hear claims related to the CSA, he makes two arguments that the facts pleaded state a money-mandating claim within the jurisdiction of the Court of Federal Claims.[9]

First, plaintiff argues that "there is evidence that the defendant concealed its acts [regarding the excess forfeiture proceeds]," Pl.'s Br. filed Aug. 16, 2010, at 1, to which he is owed notice and accounting, if not the excess proceeds, as well, *id.* at 7; Compl. at 9–10. He rests this argument on a purported right to money damages created by the statutes under which the United States satisfied the forfeiture amount against plaintiff. Pl.'s Br. filed Nov. 12, 2010, at 3 ("[B]oth 21 U.S.C. [§ ] 881 and 21 U.S.C. [§ ] 853 are money mandating."). Second, plaintiff argues that this "illegal exaction" implicates the court's jurisdiction under the Fifth Amendment's Takings Clause and under the forfeiture statutes. *See* Pl.'s Br. filed Aug. 16, 2010, at 10; Pl.'s Br. filed Nov. 12, 2010, at 5. While plaintiff presents these arguments separately, the former relies upon the latter.

---

9. Plaintiff argues in his filings that his claim is not time-barred because the Government collected "the money in excess of the monetary forfeiture judgment against him ... within the dates running through 2004 and that the amount of the government's liability could not be determined until this date." Pl.'s Br. filed Nov. 12, 2010, at 3; *see also* Pl.'s Br. filed Aug. 16, 2010, at 3. Even if plaintiff's claim were not barred by the statute of limitations, his claim is still jurisdic-

tionally barred if he fails to demonstrate the existence of a money-mandating claim. *See Greenlee*, 487 F.3d at 875. Because the existence of "some substantive right guaranteed by or granted in the underlying document upon which jurisdiction is based" is "dispositive," *see California v. United States*, 271 F.3d 1377, 1382, 1384 (Fed.Cir.2001), this court will concentrate its analysis on plaintiff's arguments pertaining to the existence of a money-mandating claim.

■ Plaintiff's first argument attempts to derive jurisdiction through an ancillary cause of action. Plaintiff argues that this case should "proceed with discovery" so that the Government can reveal "the specifics" of the "very limited accounting given" to him regarding the "amounts of money collected" from selling his forfeited assets. Pl.'s Br. filed Aug. 16.2010, at 7–9. Defendant responds that "the statutory or constitutional claims a plaintiff asserts must be 'money-mandating' to come within the jurisdiction of this court." Def.'s Br. filed July 9, 2010, at 5. While defendant is not incorrect, its analysis is incomplete. "[T]he Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for money relief over which it has jurisdiction." *See Nat'l Air Traffic Controllers Ass'n v. United States,* 160 F.3d 714, 716 (Fed.Cir.1998). Plaintiff insists that the statutes under which the United States collected the forfeiture judgment against him are money-mandating statutes over which this court has jurisdiction. Pl.'s Br. filed Nov. 12, 2010, at 3. It is at this point plaintiff's first and second jurisdictional arguments converge.

■ Plaintiff argues that the forfeiture statutes support his money-mandating claim because "the excess forfeiture under the substitute [property] forfeiture was improper." *See* Pl.'s Br. filed Nov. 12, 2010, at 5. Defendant responds that this court is "preempted" from reviewing the criminal forfeiture action because Congress articulated a statutory scheme for federal district courts to review such actions that arise from CSA convictions and criminal forfeitures. *See* Def.'s Br. filed Oct. 22, 2010, at 4–6. Defendant is not incorrect, *see Vereda,* 271 F.3d at 1375, but the argument does not completely address plaintiff's jurisdictional assertion. Plaintiff is not arguing that he seeks review of his criminal forfeiture, but that the impropriety of the Government's realizing excess proceeds from the forfeiture constitutes an "illegal exaction" under the relevant forfeiture statutes and the Fifth Amendment Takings Clause, thereby implicating the court's jurisdiction. *See* Pl.'s Br. filed Aug. 16, 2010, at 10; Pl.'s Br. filed Nov. 12, 2010, at 5.

Plaintiff analogizes to *Litzenberger v. United States,* 89 F.3d 818, 820 (Fed.Cir. 1996), in which the Federal Circuit affirmed a district court's jurisdiction to review a forfeiture under the CSA. "[W]hile *Litzenberger* can be read as recognizing the district courts' jurisdiction over a forfeiture of seized property or money under the Controlled Substances Act, it does not suggest the Court of Federal Claims has similar jurisdiction." *See Crocker,* 125 F.3d at 1477. Plaintiff wants review of the wrongful seizure of excess criminal forfeiture proceeds. *See* Compl. ¶ 1 ("[This] is a monetary claim for a sum in excess of $100,000 arising from the improper seizure of plaintiff's property which seizure was in excess of a monetary forfeiture judgment ... against the plaintiff."). However, in giving federal district courts original jurisdiction over "any seizure," 28 U.S.C. § 1356 (2006), does not distinguish between a seizure in excess of the authorized amount and a challenge to the seizure itself.

■ Plaintiff also attempts to tie jurisdiction to an accounting under the Fifth Amendment's Taking's Clause. *See* Pl.'s Br. filed Nov. 12, 2010, at 9. Plaintiff re-framed this argument from a Fifth Amendment Due Process Clause argument to a Takings Clause argument during briefing. Compl. ¶ 22 ("Plaintiff's constitutional rights of due process were violated by the unconstitutional and illegal seizure and sale of his privately held assets for an amount of money far in excess of any forfeiture judgment."); Pl.'s Br. filed Aug. 16, 2010, at 10 ("The claim plaintiff is making involves the taking of private property and its sale to satisfy a forfeiture judgment which taking was in excess of the amount of the forfeiture."); U.S. Const. amend. V. Nonetheless, "the Tucker Act does not create jurisdiction in the Court of Federal Claims for a party contesting the propriety of a taking." *Crocker,* 125 F.3d at 1476 (citing *Fla. Rock Indus., Inc. v. United States,* 791 F.2d 893, 898–99 (Fed.Cir.1986)); *Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 802 (Fed.Cir.1993) ("[The] claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act."). Plaintiff cannot (and does not) concede the validity of the government action he cites as the basis of the

taking—the Government's realization of excess forfeiture proceeds—because the propriety of that action is the very basis of his takings claim. *See* Compl. ¶ 1.

The nature of plaintiff's action is a demand for an accounting of the disposition of the relevant assets and a return of the excess proceeds. *See* Compl. at 9. Taken together with plaintiff's lack of notice regarding the excess proceeds from the Bicycle Club's sale, a notice that defendant has yet to produce, the facts pleaded suggest a cause of action may exist. *See, e.g.,* Fed.R.Crim.P. 41(g) ("A person aggrieved by an unlawful ... seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized.").

### III. *Transfer of plaintiff's complaint*

 The transfer statute requires that "[w]henever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court *shall,* if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 1631 (2006) (emphasis added); see *Jan's Helicopter Serv. v. FAA,* 525 F.3d 1299, 1303–04 (Fed.Cir. 2008); *Rodriguez v. United States,* 862 F.2d 1558, 1559–60 (Fed.Cir.1988). The Federal Circuit consistently has understood to "[t]he phrase 'if it is in the interest of justice' [to] relate[ ] to claims which are nonfrivolous and as such should be decided on the merits." *Galloway Farms, Inc. v. United States,* 834 F.2d 998, 1000 (Fed.Cir.1987); *cited with approval in LeBlanc v. United States,* 50 F.3d 1025, 1031 (Fed.Cir.1995). The Federal Circuit allows a trial court to order transfer without being asked by either party. *Tex. Peanut Farmers v. United States,* 409 F.3d 1370, 1375 (Fed.Cir.2005).

 Plaintiff's filings present justiciable issues regarding whether the United States was required to give, or gave, notice and whether plaintiff had de facto notice when the forfeiture exceeded the authorized amount and ultimately whether the Government is obligated to return to plaintiff the proceeds realized in excess of the forfeiture amount.

Plaintiff's claims are "nonfrivolous and as such should be decided on the merits." *Galloway,* 834 F.2d at 1000. Because the transferee court must possess subject matter jurisdiction, *Jan's Helicopter Serv.,* 525 F.3d at 1304, transfer is proper in the U.S. federal district where the forfeiture order was entered. To be clear, this court is not suggesting that plaintiff may be able to state a claim for relief under the applicable statutes or that plaintiff's claim may not be time-barred under the applicable statute of limitations, as those issues are for the district court to determine.

### CONCLUSION

Accordingly, based on the foregoing, the Clerk of the Court shall transfer plaintiff's complaint to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. § 1631.

**IT IS SO ORDERED.**

No costs.